IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Paul Lewis Richards, ) | C/A No.: 3:14-4234-JMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| Donald Robinson and Stephen Dauway, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Paul Lewis Richards ("Plaintiff"), proceeding pro se, filed this civil rights action, alleging violations of his constitutional rights. He sues Donald Robinson and Stephen Dauway (collectively "Defendants"), investigators for the Richland County Sheriff's Department ("RCSD"). This matter is before the court on Defendants' motion for summary judgment. [ECF No. 24]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [ECF No. 25]. The motion having been fully briefed [ECF Nos. 31, 38], it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(f) (D.S.C.). Because the motion is dispositive, this report and recommendation is entered for review by the district judge. For the following reasons, the undersigned recommends Defendants' motion for summary judgment [ECF No. 24] be granted.

I.     Factual Background

On March 7, 2013, Bonita Chapman ("victim") filed an incident report with the RCSD, alleging that her Richland County, South Carolina, home was burglarized and her jewelry was stolen. Dauway Aff. at ¶5.[1] During this burglary, the victim advised that the suspect forced his way into the house and removed her jewelry box and its contents from the bedroom. *Id*. The victim had private surveillance cameras operating in her driveway that captured pictures of the suspect's vehicle as it entered her property. *Id*. at ¶8. The vehicle was identified as a Chrysler registered to Plaintiff's wife, Katrina Richards. *Id*. at ¶9. Dauway identified Plaintiff as the primary suspect, as Plaintiff had previously been arrested in the vicinity for burglary involving jewelry theft and Dauway knew Plaintiff was married to Katrina Richards. *Id*. at ¶¶10–11. On March 8, 2013, while conducting surveillance on Plaintiff's residence, Dauway observed Plaintiff driving the Chrysler vehicle. *Id*. at ¶12.  Dauway knew Plaintiff had a suspended drivers' license, and he arrested Plaintiff for Driving Under Suspension. *Id*. While searching Plaintiff incident to arrest, a small jewelry box with diamond earrings was found in his possession and a small matching pendant was found in his coat pocket. *Id*. at ¶14; Pl. Aff. at ¶9.[2] These items were later identified by the victim as having been stolen from her house. *Id*. Plaintiff was interviewed at RCSD headquarters, and he denied any knowledge or involvement in the burglary. *Id*.

Also on March 8, 2013, a Richland County Magistrate issued a search warrant for

---

[1] Dauway's affidavit may be found at ECF No. 24-9.
[2] Plaintiff's affidavit may be found at ECF No. 31-3.

Plaintiff's residence at 515 Scarsdale Drive in Columbia, South Carolina, and arrest warrants for Plaintiff for burglary in the first degree and grand larceny. [ECF No. 24-11]. The "Description of Property" portion of the search warrant states "The items sought are 2 foot tall cherry jewelry box, ruby necklaces, pair of diamond earrings, 14kt gold and topaz necklaces, and a gold and diamond necklace." *Id*. Robinson, Dauway,[3] and other RCSD officers executed the search warrant the same day. The execution of the search warrant did not result in the recovery of items described, but the following items were seized:[4] a women's Gucci watch, a women's Fossil watch, 5 miscellaneous pieces of antique unique jewelry, a black Canon digital camera, an ipad, a Sony digital camera, a Magnavox DVD player, and a loaded .40 caliber Glock 27 handgun. [ECF No. 24-5].[5] The handgun was researched and determined to have been stolen from an incident in Lexington County. Robinson Aff. at ¶27. Robinson returned the seized property, with the exception of the handgun, to Plaintiff on May 24, 2013. [ECF No. 24-8].

---

[3] During the search Dauway became acutely ill and was transported to the emergency room. Robinson Aff. at ¶16; Dauway Aff. at ¶17. Dauway remained hospitalized for approximately one month. Robinson Aff. at ¶29. The undersigned recommends Dauway be dismissed, as he was not present for the seizure of the items.

[4] Robinson stated that Katrina Richards gave him consent to seize some of the items (Robinson Aff. at ¶¶24–25), but Richards denies providing consent (Katrina Richards Aff. at ¶¶12–15). Richards' affidavit may be found at ECF No. 31-3. For summary judgment purposes, the undersigned views all disputes of fact in the light most favorable to Plaintiff as the non-moving party.

[5] Although the inventory does not include mention of a Samsung cellphone [ECF No. 24-5], the supplementary report indicates a Samsung cellphone was returned to Plaintiff [ECF No. 24-8]. Additionally, Defendants indicated laptops were seized (Robinson Aff. at ¶23), which Plaintiff denies [ECF No. 31 at 4].

II.   Discussion

   A.   Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319

(1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.     Analysis

1.     Scope of Search and Seizure

Plaintiff argues Robinson's search and seizure of his home was unreasonable. The Fourth Circuit Court of Appeals has held:

> A search conducted pursuant to a warrant is limited in scope by the terms of the warrant's authorization. *Walter v. United States*, 447 U.S. 649, 656 (1980) (plurality); *see also United States v. Squillacote*, 221 F.3d 542, 555 (4th Cir. 2000). However, a search warrant is not a "constitutional strait jacket." *United States v. Dornhofer*, 859 F.2d 1195, 1198 (4th Cir. 1988) (citation and internal quotations omitted). In interpreting search warrants, we must heed the Supreme Court's reminders to employ a "commonsense and realistic" approach, *United States v. Ventresca*, 380 U.S. 102, 108, (1965), and avoid "'hypertechnical' scrutiny . . . lest police officers be encouraged to forgo the warrant application process altogether." *United States v. Robinson*, 275 F.3d 371, 380 (4th Cir. 2001) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). These fundamental legal principles apply not only to determining the validity of a warrant but also to assessing its scope. *United States v. Srivastava*, 540 F.3d 277, 290, n. 16 (4th Cir. 2008).

*U.S. v. Phillips*, 588 F.3d 218, 223 (4th Cir. 2009).

Courts have sometimes found seizure of items not specifically named in a search warrant to be reasonable. In *Horton v. California*, 496 U.S. 128 (1990), the officers executed a search warrant for the fruits of a robbery, including three specifically described rings. *Id*. at 131. The officers did not find the rings, but discovered and seized guns of the type used in the robbery. *Id*. Because the weapons were found in a place

5

where the undiscovered items could have been located, the seizure met what the *Horton* Court referred to as the "essential predicate . . . that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Id*. at 136.

Courts have also permitted items related to the same type of criminal behavior to be seized, even where there is no nexus to the specific crime at issue. For instance, in the execution of a search warrant for stolen property, courts have allowed seizure of items believed to have been stolen on another occasion. *See, e.g., United States v. Golay*, 502 F.2d 182 (8th Cir. 1974); *State v. Turner*, 210 Kan. 836, 504 P.2d 168 (1972); *State v. Streitz*, 258 N.W.2d 768 (Minn. 1977).

Here, the undersigned finds that Robinson did not violate the Fourth Amendment when he seized jewelry, watches, and a handgun. The jewelry and watches were of a type of evidence related to the crime being investigated and Plaintiff's wife did not have knowledge of some of these items. Katrina Richards' Aff. at ¶¶16–17. The handgun was researched[6] and found to have been stolen in another incident.

Given the record before the court, there is an issue of fact as to whether Robinson's seizure of digital cameras, an ipad, a cell phone, and a DVD player was reasonable. Although Defendants generally argue there were several burglaries within five miles of the victim's residence in the prior six months in which "computer items" had been stolen (Robinson Aff. at ¶23), they have failed to provide greater or more

---

[6] Although it is not entirely clear, Defendants imply that they researched the handgun prior to seizing it. Robinson Aff. at ¶27.

6

specific evidence showing that these items may have been evidence of a crime. Therefore, based on the limited record before the court, the undersigned finds there is a genuine dispute of fact regarding whether Robinson's seizure of the electronic items was reasonable.

### 2.     Qualified Immunity

Under the qualified immunity defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity ensures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. *Id*.

As discussed above, the facts viewed in a light most favorable to Plaintiff present a genuine dispute of material fact as to whether Robinson violated Plaintiff's Fourth Amendment rights. Therefore, the court will turn to the question of whether those rights were clearly established at the time of the violation. To be clearly established,

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has been previously held unlawful; but it is to say that in light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The issue that the court must resolve is whether, at the time the events occurred, the law "gave the officials 'fair warning' that their conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006)).

Courts have reached different conclusions in determining what unnamed items may be seized during the execution of a search warrant. *See Wiggins v. State*, 315 Md. 232, 554 A.2d 356 (1989) (finding that during execution of warrant for specific items stolen in burglary, seizure of unnamed articles also stolen in that burglary was unlawful, as nothing in record indicated unnamed items had been reported stolen); *but see State v. James*, 579 P.2d 1257 (1978) (finding that where there's a warrant for fruits of one burglary, including a watch, it was proper to seize five other watches when it was known such articles were taken in other burglaries); *State v. Dignoti*, 682 A.2d 666 (Me. 1996) (holding that in execution of search warrant for drugs, where police also had been informed defendant was in receipt of stolen property, there was probable cause to seize various articles in garage such as commercial construction equipment which did not fit with rest of items in garage, were all stacked in a pile in corner, and unlike other items in garage were not dusty); *State v. Carr*, 361 N.W.2d 397 (Minn. 1985) (finding it proper to seize many TVs, stereos, etc. in light of "quantity and placement of the articles," where it was known defendant was trading drugs for stolen property, but the warrant specified

8

only stolen phone equipment). Plaintiff has not cited, and the undersigned has not found, any controlling case law providing Defendants fair warning that seizure of the items was unconstitutional. Therefore, the undersigned recommends Defendants be granted summary judgment because they are entitled to qualified immunity.

### 3.     No individual liability under South Carolina Tort Claims Act

The South Carolina Tort Claims Act ("SCTCA") "constitutes the exclusive remedy for any tort committed by an employee of a governmental entity." S.C. Code Ann. § 15-78-70(a). An employee of a governmental entity is immune from liability for tortious acts committed within the scope of his official duties. Such an employee who allegedly commits a tort while acting within the scope of his official duty is not liable except for actual fraud, actual malice, intent to harm, or a crime involving moral turpitude. S.C. Code Ann. § 15-78-70(a) and (b).

Plaintiff has not alleged that Defendants acted outside the course and scope of their official duties. Nor has Plaintiff shown that Defendants' alleged acts or omissions constitute actual fraud, actual malice, intent to harm, or a crime involving moral turpitude. Therefore, Defendants are immune from suit in their individual capacities under S.C. Code Ann. § 15-78-70(a) and (b). Further, Plaintiff has not named an agency as a defendant. *See* S.C. Code Ann. § 15-78-70(c) (1976) ("[A] person, when bringing an action against a governmental entity under the provisions of [the South Carolina Tort Claims Act], shall name as a party defendant only the agency or political subdivision for which the employee was acting and is not required to name the employee individually. . . ."). The undersigned recommends Defendants be granted summary judgment for

Plaintiff's claims under the SCTCA.

        4.        Damage to Property

Plaintiff asserts that Defendants damaged a Gucci watch and lost one earring [ECF No. 1-4 at 3]. The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. However, the Due Process Clause is not implicated by a negligent act of a governmental official causing unintended loss of or injury to life, liberty, or property. *Daniels v. Williams*, 474 U.S. 327 (1986); *Pink v. Lester,* 52 F.3d 73, 75 (4th Cir. 1995).

Moreover, an intentional deprivation of property by a governmental employee does not violate the Due Process Clause if a meaningful post-deprivation remedy for loss is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Mora v. City of Gaithersburg, MD*, 519 F.3d 216, 230–31 (4th Cir. 2008) (concerning the intentional taking of guns and ammunition); *Bogart v. Chapell*, 396 F.3d 548, 561–63 (4th Cir. 2005) (finding that intentional destruction of a plaintiff's property did not violate the due process clause because South Carolina afforded a meaningful post-deprivation remedy for such loss). In South Carolina, a prisoner may bring an action for recovery of personal property against officials who deprive them of property without state authorization. *See McIntyre v. Portee*, 784 F.2d 566, 567 (4th Cir. 1986) (citing S.C. Code Ann. § 15-69-10). Such an action provides "a post-deprivation remedy sufficient to satisfy due process requirements." *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)).

Here, although Plaintiff claims in his complaint that Defendants damaged a Gucci watch and lost an earring, he provides no more specific information. Plaintiff does not explain how the watch is damaged or give any information about the earring he alleges was lost. Neither Plaintiff nor Defendants provide any argument regarding the alleged deprivation of property. Although the court retains supplemental jurisdiction of state law claims that form part of the same case or controversy as the federal claims, "[a]s a practical matter . . . many district judges will exercise their discretion under the supplemental jurisdiction statute and dismiss the remaining claims." 16 Moore's Federal Practice § 107.14(3)(b)(ii) (3rd ed. 2013); *see also* 28 U.S.C. § 1367(c). Pursuant to 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction "if the district court has dismissed all claims over which it has original jurisdiction." *See also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Therefore, the undersigned recommends Plaintiff's claim for damage to the Gucci watch and loss of one earring be remanded to the Richland County Court of Common Pleas.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Dauway be granted summary judgment on all claims, Robinson be granted summary judgment on Plaintiff's Fourth Amendment claims and claims pursuant to the SCTCA, and this matter be remanded as to Plaintiff's claim for negligent deprivation of property claim against Robinson.

IT IS SO RECOMMENDED.

December 9, 2015				Shiva V. Hodges
Columbia, South Carolina			United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

12

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).